[No. 1645.]

## THAD. WILLIAMS v. THE STATE.

1. MANSLAUGHTER—CHARGE OF THE COURT.—Note the opinion *in extenso* for state of case wherein, charging upon the law of manslaughter, the court instructed the jury, in effect, that the law of manslaughter so far as aggravated assault was concerned hinged upon the fact that the injured party first assaulted the defendant and struck him, inflicting such pain as aroused in defendant anger, rage, resentment or terror sufficient to render the mind incapable of cool reflection. *Held*, error in view of the evidence; and that the law of manslaughter should not thus have been limited to the fact that the injured party struck the defendant and inflicted pain sufficient to arouse anger, rage, resentment or terror such as would render him incapable of cool reflection, but, under the evidence in this case, the jury should have been instructed that, if it reasonably appeared to the defendant from the acts of the injured party, that the defendant was in danger of serious bodily harm or death, and he was thereby aroused to such terror or resentment by the danger that his mind was incapable of cool reflection, and in that condition he had slain the injured party, his offense would not have been murder, but manslaughter; and under the same conditions, death not resulting, the offense could not be assault with intent to murder, but might be aggravated assault.

2. SAME—"ADEQUATE CAUSE."—An assault and battery by the deceased, causing pain and bloodshed, is, by the statute, made an "adequate cause;" bodily pain is not absolutely essential to adequate cause in manslaughter. Passion and not pain is the criterion.

3. SAME.—Adequate cause is not limited to the illustrations enumerated in the Code. Any condition or circumstance which is capable of creating a sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is adequate cause.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. Gustave Cook.

The conviction was for an assault with intent to kill one Dennis J. May. The punishment imposed was a term of three years in the penitentiary.

The opinion sets out the testimony of May and Kemp. Save that of the physician who testified as to the nature of the wounds, the testimony of the witness Flynn was the only addi-

tional testimony adduced on the trial. It is in substance as follows:

The witness was in the employ of D. J. May, who at the time of the offense was engaged in laying pipe at the Beach Hotel. The defendant drove into the yard with a dray load of charcoal, and proceeded to unload it at a place which had been cleared and where loose pipe had been laid by May, preparatory for his work. May told him not to unload the coal at that place. Defendant replied that he had been directed so to do by the storekeeper at the hotel. May again told defendant not to deposit it there, as it interfered with the pipe laying. Defendant replied that he was following instructions. A wordy altercation ensued. May stooped and picked up from the ground a piece of timber, about four or five feet long, and some two inches square. As he raised it up defendant seized and wrenched it from May's hand, and struck May about the head and shoulders. He struck May a second time, and May fell on a pile of bricks and threw up his arm, which the defendant struck with the timber. Defendant then struck May another blow about the head. Witness saw May have nothing in either hand except his broken arm, which he held in his other hand.

The motion for new trial assailed the charge of the court and denounced the verdict as excessive, and as not supported by the evidence.

No brief for appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. This appeal is from a conviction for an assault with intent to murder one Dennis May. There is but a single question presented by the record, and that is as to the sufficiency and correctness of the charge of the court as given to the jury.

In order to test the sufficiency and correctness of the charge, we will copy from the statement of facts the testimony of a witness. It is as follows: "Robert Kemp, being sworn, testified: 'On the twentieth day of August, 1883, I was engaged in hauling water to the Beach Hotel. I was there at the time of the difficulty between May and the defendant. I had arrived with a load of water before defendant came. Defendant drove into the yard behind my wagon, with a load of charcoal in sacks. I

was upon my wagon transferring the water from the barrels in my wagon to a cistern. Defendant commenced unloading the coal by carrying the sacks upon his shoulder from the dray and emptying them upon the ground. May objected to his putting the coal at the place where he was depositing it, and a dispute arose between them. Defendant said that he was paid to haul the coal, and that he was putting it where the proprietor had directed him to put it, and that he would obey the instructions of his employer. May said that defendant should not put the coal in that place, and that he would not permit him, and that he would see to it that defendant should not put the coal there. High words ensued between them. At the time defendant had already emptied several sacks, and had taken another from the dray, and, with it upon his shoulder, was going toward the place where he had emptied the others, when I saw May pick up a piece of timber about two inches square and about four or five feet long, and raised it up in the act of striking, and walked toward defendant with it raised to strike him. The defendant had his back toward May, and was walking quartering to him, when May raised the stick to strike him, when I called out to defendant and told him to look out. He turned around just as May brought down the stick in the act of striking him, and the defendant caught the blow with his hands and wrenched the stick from May's hands. May then stooped down by a pile of bricks, which was at his feet, and seized one and raised it up from the ground, when the defendant struck him about the head or shoulders, and May sank partially down and let his hand down with the brick, but did not loose his hold upon it, but held on to it and again attempted to raise it, when defendant struck him again with the stick, but May raised his arm and received the blow upon his arm, and again let down the brick, but did not let go his hold upon it. May again attempted to raise the brick, when defendant again struck him about the head or shoulders, and he fell or was falling when I jumped from my wagon and caught defendant about his arms and held him, and told him not to strike him again, as he would kill the man. Defendant said, 'Well, what can I do? they are trying to kill me.' Defendant then got upon his dray and drove away. The piece of timber that was used in the difficulty was one that I had in use for the purpose of removing the bungs from the barrels, and the stick was lying upon the ground near by where the difficulty occurred. I was standing on my wagon just above the parties,

and could see everything that passed, and could hear distinctly what was said."

There was other testimony in the case which conflicts with the witness Kemp. Dennis May, the assaulted party, after detailing the antecedent circumstances up to the time defendant was about emptying his sack of coals, said: "I looked about for a plank with which I could prevent the coal from interfering with my pipes and the work I was about to do. I could find no plank, but I observed a piece of timber, about two inches square and about four or five feet long, lying on the ground near by, and I stooped and reached down to take it up for that purpose. As I was rising with the piece of timber, and while still in a stooping position, I felt that it had been taken hold of at the other end, and I looked up and saw that defendant held it with his hands, and he wrenched it from my hands and struck me with it upon the head. He, the defendant, then raised the stick above and was about to strike again when I lifted up my left arm to protect my head, and received the blow on my arm. which broke it between the elbow and wrist. I fell on a pile of bricks, and he struck me on my head again, and stunned me, and I lost consciousness. I could not hear what he said, but I heard the word 'white.' I did not intend to strike defendant with the piece of timber when he took hold of it, but I did not so tell him or any other person, nor did I express or intimate to him or any other person what my purpose or intentions were when I undertook to take up the piece of timber, and I do not know that he knew what were my intentions or purposes. He could not know from any remark or expressions made by me, as I did not say anything at the time and had not for several minutes before. We were facing each other at the time I undertook to pick up the stick of timber, and were but a few yards apart."

In his charge the learned judge very properly told the jury that "the credibility of witnesses and the weight of evidence are committed to the jury, and by their conclusions thereon under the law given them they should find their verdict."

What was the law given in the charge to them? We reproduce the charge as follows:

"If you believe from the evidence that the defendant, Thad. Williams, being then and there a person of sound memory and discretion, did, as charged in the indictment, with malice aforethought, intending to kill Dennis May, unlawfully strike him with a stick of wood in a manner showing a heart regardless of

social duty and fatally bent on mischief, and that the stick of wood was, as used, a deadly weapon capable reasonably and probably of producing the death of May, say you find defendant guilty of assault with intent to murder," etc.

"Malice aforethought is the voluntary and intentional doing of an unlawful act, with purpose, means and ability to accomplish the reasonable and probable consequences of it, in a manner showing a heart regardless of social duty and fatally bent on mischief, by one of sound memory and discretion."

"The defendant is presumed innocent until proven guilty by the evidence to the satisfaction of the jury beyond reasonable doubt; and, unless you are satisfied by the evidence in this case that the defendant acted with malice aforethought, intending unlawfully to kill May, and that the defendant had the ability and used a weapon or instrument capable as used reasonably and probably of producing the death of May, you will not find defendant guilty of assault with intent to murder. Or if you further believe from the evidence that May first assaulted defendant and struck him, inflicting pain, and that defendant was thereby aroused to anger, rage and resentment or terror, rendering him incapable of cool reflection, and under the influence thereof he unlawfully struck May, inflicting serious bodily injury, you would find him guilty of aggravated assault and battery, and assess the punishment," etc.

"If May had first assailed defendant, and defendant possessed himself of the weapon or instrument with which he was assailed, and his safety was thereby secured and he was no longer in danger of injury, he would not be justified nor excused in law in making an assault upon May, and an assault so made would be unlawful, and the defendant guilty of whatever offense his acts constituted under the law given you, and if such is the case under the evidence you should find him guilty of the offense, naming it, and assess therefor," etc.

"But, if it appears from the evidence that May was making demonstrations further to assail defendant and inflict bodily injury upon him, and that defendant, moved by a reasonable apprehension thereof, acted in his defense, he was justifiable in doing so and adopting such means as would accomplish his safety, and for doing so he would be not guilty of any offense, and you should so find, unless it further appears from the evidence, to your satisfaction beyond a reasonable doubt, that he used greatly more force than was reasonable or necessary, and

that, after securing his safety, he unnecessarily and unlawfully assailed May, when he would be guilty of whatever offense his acts constituted under the law hereinbefore given you," etc.

"The defendant is presumed innocent," etc.

We have thus given, almost literally, the entire charge. Did it present the vital issues made by the facts, so far as defendant was entitled in law?

Let us see with regard to aggravated assault and battery. It will be seen from the charge that the law of manslaughter, so far as aggravated assault was involved, was made to hinge upon the fact that "May first assaulted defendant and struck him, inflicting such pain as aroused in defendant anger, rage, resentment or terror, sufficient to render the mind incapable of cool reflection." Now the evidence is not positive that May struck defendant; but the evidence of May himself was that he not only did not strike, but did not even intend to strike defendant, and the evidence of Kemp was not that May struck, but that he raised the stick up in the act of striking, and when May raised the stick to strike he, the witness, called out to defendant to "look out." Defendant did not and could not know of May's intention not to strike him, if such, as he says, was his intention. But Kemp thought he was going to strike, and he called to defendant to "look out," as May brought down the stick in the act of striking. It appeared to Kemp that defendant was about to be struck Suppose the same thing reasonably appeared to defendant, and in terror at the imminent danger of being struck, or in rage or anger aroused by his peril, he had seized the stick and inflicted a blow which caused May's death, would he not, under such reasonable apprehensions and appearances of danger, have had the right to a charge upon manslaughter? Most unquestionably, in our opinion. May might not have struck him, might never have intended to strike him, and yet, if defendant did not know what his intentions were, and it reasonably appeared to him from May's acts that he was in danger of serious bodily harm or death, and he was thereby aroused to such terror or resentment by the danger as that his mind was incapable of cool reflection, and in that condition he slew May, his offense would not have been murder but manslaughter; and, under the same conditions, death not resulting from his assault on May, his offense could not have been assault with intent to murder, but aggravated assault. Defendant was entitled to have the jury apply the law to the facts, not as they appeared

to the jury but as they reasonably at the time appeared to him. The jury may have believed, and doubtless did believe, May's testimony to the effect that he not only did not strike, but did not intend to strike defendant, and yet defendant at the time, not knowing May's intentions, might have believed and reasonably believed just exactly the contrary.

We are of opinion that the court erred in limiting the law of manslaughter, as applicable to the case, to the fact that May must have struck defendant and inflicted such pain as aroused defendant's anger, rage, terror or resentment to such degree as to render his mind incapable of cool reflection.

Nor is bodily pain absolutely essential to adequate cause in manslaughter. It is true that an assault and battery by the deceased, causing pain or bloodshed, is an adequate cause, made so by statute. (Penal Code, Art. 597.) But adequate cause is not limited to the illustrations enumerated in the Code. Any condition or circumstance which is capable of creating sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is adequate cause. (Penal Code, Art. 594; *Neyland* v. *The State*, 13 Texas Ct. App., 536.) The adequate cause is estimated, not by pain, but *passion*.

Now, whilst the facts in evidence might have been insufficient to satisfy the jury that defendant acted in self-defense, they may be amply sufficient, under proper instructions, to authorize them in finding that, had death resulted, his crime would have been no greater than manslaughter, and, in such event, they should only have found aggravated assault under the facts in this case.

Because the charge of the court did not submit the law applicable to the facts upon the matters herein discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*